**Rachele GARROTT, Plaintiff,**

v.

**BOARD OF REGENTS OF THE UNIVERSITY OF WISCONSIN SYSTEM, Defendant.**

No. 04–C–788–C.

United States District Court, W.D. Wisconsin.

Aug. 16, 2005.

Brian C. Hough, Robinson Law Firm, Appleton, WI, for plaintiff.

## OPINION AND ORDER

CRABB, District Judge.

This is a civil action in which plaintiff Rachele Garrott asserts that she was the victim of race and national origin discrimination, harassment and retaliation by employees of defendant Board of Regents of the University of Wisconsin System. Plaintiff states her claim exclusively under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e. (Plaintiff notes in her brief that she does not state a claim under either 42 U.S.C. §§ 1981 or 1983, although she cites those statutes in her complaint. Because she does not develop her claims under §§ 1981 or 1983, I will deem those claims waived. *Central States, Southeast & Southwest Areas Pension Fund v. Midwest Motor Express, Inc.*, 181 F.3d 799, 808 (7th Cir.1999) ("Arguments not developed in any meaningful way are waived."). ) Jurisdiction is present. 28 U.S.C. § 1331.

Presently before the court is defendant's motion for summary judgment. This case presents the question whether plaintiff has proposed enough facts to show that two of her supervisors, Cheryl Harper and Marcia Jezwinski, retaliated, harassed and discriminated against her because of her race and national origin. The answer is that she does not. Plaintiff fails to point to any evidence showing a causal connection between her participation in a June 2000 investigation of Harper and the decision by Jezwinski to terminate her a year later. In addition, the undisputed evidence shows that any discriminatory acts by Harper are time-barred and plaintiff fails to propose any facts showing that Jezwinski discriminated against her. Plaintiff's attempt to invoke the continuing violation doctrine for her hostile environment claim is futile be-

cause there are no facts showing a link between Harper and Jezwinski or that Jezwinski discriminated against her. Because plaintiff defied her employer's rules and repudiated her own promises while on medical leave, no reasonable juror could find that her termination from employment was the result of retaliation, harassment or discrimination based on her race and national origin. I will grant defendant's motion for summary judgment.

As an initial matter, I have treated as undisputed facts proposed by defendant to which plaintiff failed to provide a response, see Dft.'s Reply to Plt.'s Resp. to Dft.'s PFOF, dkt. # 28, ¶¶ 20, 30 and 31, as well as facts proposed by plaintiff that defendant failed to properly dispute. Rule I.B.2 of this court's *Procedure to Be Followed on Motions for Summary Judgment* requires each factual proposition to be followed by a reference to evidence supporting the proposed fact. In plaintiff's proposed finding of fact ¶ 3, plaintiff lists several actions by her supervisor, Cheryl Harper, that she believes show racial and national origin discrimination. Resp. to Plt.'s PFOF, dkt. # 27. Although defendant disputes these propositions, it fails to cite evidence to put those actions into dispute. Therefore, I have treated the facts in ¶ 3 as undisputed. Plaintiff's proposed facts ¶¶ 10 and 11 were treated in a similar manner. *Id.*

From the parties' proposed findings of fact and the record, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

Plaintiff Rachele Garrott is a black woman from Eritrea, a country in Africa. Defendant Board of Regents of the University of Wisconsin System is a governmental entity. It employed plaintiff in its Division of Information Technology (DoIT) from June 4, 1990 until June 1, 2001. Cheryl Harper was plaintiff's supervisor until July 27, 2000. Marcia Jezwinski is DoIT's Director of Human Resources.

Throughout the time that Harper was plaintiff's supervisor, Harper said or did the following to plaintiff:

a) Questioned her about how long she had been in the United States;

b) Criticized her use of hennas, head wraps, beaded jewelry and loud colors;

c) Criticized her efforts to display Eritrean art, while allowing other white, American born co-workers to display whatever art that they wanted;

d) Said that the smell of Eritrean food made her sick;

e) Told her that minorities provide typical answers during job interviews;

f) Told her that she was the best minority Harper had ever interviewed;

g) From 1990–95, prevented her from getting promotions;

h) Treated her disrespectfully, such as rummaging through her personal belongings without reason;

i) Forced her to work over 100 hours a week throughout 1999, much of which was devoted toward tending to Harper's personal problems. Harper forced plaintiff to clean Harper's apartment and insisted that plaintiff allow Harper to use plaintiff's personal credit cards;

j) Criticized plaintiff's involvement in minority affairs, such as when she tried to help with the "Equity and Diversity" committee in 1994;

k) Made her job more difficult whenever plaintiff would object to tending to Harper's personal problems;

l) Forced plaintiff to leave work when she refused Harper's request for a ride home in 1999;

m) Intimidated her by threatening the use of witchcraft against her in 1999;

n) Never provided her the training that she needed.

In June 2000, plaintiff assisted in an investigation against Harper concerning her abusive tactics at work. As she provided information during this investigation, plaintiff referred to some of the events set out above. In October 2000, plaintiff's friend Sharon Pero tried to convince plaintiff to change her story regarding Harper. By November 2000, the effects of Harper's harassment caused plaintiff such great stress, depression and anxiety that she decided to take medical leave.

In November 2000, plaintiff submitted a family medical leave request for a medical leave of absence from November 2, 2000 through December 11, 2000. In a letter dated November 20, 2000, Jezwinski approved plaintiff's request for leave. In December 2000, Jezwinski encouraged plaintiff to resign. (The parties dispute whether Jezwinski terminated plaintiff's health insurance on December 31, 2000.) On December 13, 2000, plaintiff advised Jezwinski, by facsimile, that her treating specialist recommended additional medical leave through January 12, 2001, with her returning to work on January 15, 2001. In an undated correspondence, Jezwinski confirmed her prior telephone conversation with plaintiff about the possibility of plaintiff's returning to work on January 12 as a way for her to earn a paid holiday on January 15, 2001.

In mid-January, when Jezwinski learned from Pay and Benefit Specialist Sandy Reuter that plaintiff planned to request another extension of her leave, she wrote plaintiff to remind her that if she planned on asking for an extension of her leave, she needed to provide Jezwinski the appropriate documentation on a timely basis. As of January 17, 2001, one day after plaintiff's expected return date, Jezwinski still had not heard from plaintiff, so she tried to reach her at home to remind her to send her medical documentation immediately.

On January 19, 2001, plaintiff provided a medical note (dated January 4, 2001) to DoIT Human Resources Manager Ann Ringelstetter, requesting leave through February 12, 2001. On January 25, 2001, Jezwinski wrote plaintiff approving the request and reminding her to provide the required medical information in a more timely fashion.

As of February 12, 2001, Jezwinski had not received any information from plaintiff or her doctor stating a need for additional leave without pay. She assumed that plaintiff would return to work as scheduled on February 12, 2001. However, plaintiff neither returned to work on that day nor called anyone at DoIT to inform them that she would not be at work. Jezwinski called plaintiff at her home to discuss why she was not at work. Plaintiff argued with Jezwinski about her return date to which Jezwinski responded by reading plaintiff's doctor's note identifying February 12 as the return date. Plaintiff told Jezwinski that she had a doctor's appointment the next day. Jezwinski reminded plaintiff to contact Jezwinski as soon as possible with information about her medical and work status.

On February 14, 2001, plaintiff sent an email to Ringelstetter, stating that she was unable to see her doctor on February 13 and that she would not be coming into work. She also asked not to be contacted at home unless it was an "extreme emergency" and stated that she wanted any calls to be made to her by Ringelstetter rather than Jezwinski; she did not want Jezwinski to call and "harass" her while on medical leave. Jezwinski's phone calls contributed to plaintiff's depression and anxiety. On February 15, 2001, plaintiff faxed another medical note to Ringelstet-

ter requesting another extension of her leave without pay to March 14, 2001.

Jezwinksi wrote plaintiff on February 22, 2001, explaining that she was the contact person at DoIt to receive confidential medical information about DoIT employees and that she would not make additional courtesy calls if plaintiff failed to communicate her medical and work status on a timely basis. In addition, Jezwinski wrote that plaintiff could contact the Equity Diversity Resource Center about her alleged harassment concerns and the campus disability coordinator about disability issues and information. Jezwinski informed plaintiff that she would treat plaintiff's failure to notify her of her status before the expiration date of her approved leave as unapproved leave that would subject her to discipline.

On March 13, 2001, plaintiff faxed Ringelstetter a medical note requesting an extension of her leave without pay to April 15, 2001. On March 27, 2001, Jezwinski informed plaintiff that her leave request was approved and that she would be expected to return to work on April 16, 2001. Plaintiff did not return to work on April 16, failed to notify Jezwinski or anyone else that she would not be at work and also failed to provide any additional information about her status. As a result, Jezwinski wrote plaintiff on April 17, 2001, informing her that she was on unapproved leave without pay. Jezwinski instructed plaintiff to contact Jezwinski by April 20, 2001 to discuss the situation or a pre-disciplinary meeting to address the unexcused absences would be scheduled.

Plaintiff submitted another medical note from her doctor, dated April 26, 2001, recommending that she return to work 10 hours each week for two to four weeks. The next day, plaintiff and Jezwinski communicated with one another. Plaintiff asked Jezwinski to stay away from her work, to which Jezwinski replied that she had nothing to do with her work assignments and that plaintiff's supervisors would decide whether she could return to work. Accordingly, a meeting was scheduled between plaintiff and Judy Caruso, the Director of Applications Technology, for Wednesday, May 2, 2001. On May 1, 2001, Caruso spoke with plaintiff by phone and told her not to come to DoIT for the May 2 meeting because her request for a 10–hour work week was still being considered. That same day, Jezwinski wrote plaintiff, advising her that her request for a 10–hour work week was denied because it was unworkable and disruptive to the program. In light of plaintiff's stated refusal to return to the duties of her position, she was offered one additional month of leave without pay to seek a more suitable position. Plaintiff was instructed specifically to respond to Caruso by noon on May 7 if she wished to apply for a more suitable position and told that if she did not respond by noon on May 7, a medical termination would go into effect on that day.

On May 7, 2001, plaintiff left a voice mail message for Caruso stating that she would provide information to her by May 14, 2001. Caruso was home on that day because of illness, but still contacted plaintiff by phone. Caruso stated that given the nature, level and complexity of plaintiff's position and job duties, she needed plaintiff at work at least 20 hours each week. Plaintiff agreed to talk to her doctor and have a response for Caruso by May 10, 2001. Additionally, Caruso and plaintiff discussed briefly where plaintiff would work and on what project. Plaintiff failed to contact Caruso on May 10, 2001. Caruso tried repeatedly to reach plaintiff without success. Because Caruso was scheduled to be out of the office May 11 through May 17, 2001, Jezwinski took responsibility for contacting plaintiff.

On May 11, 2001, Jezwinski spoke with plaintiff by phone to discuss DoIT's need for additional documentation from her doctor. Plaintiff refused to take the appropriate steps to obtain the information from her doctor and stated that she wanted to talk to Caruso. On May 14, 2001, Caruso spoke with plaintiff and plaintiff agreed that she would provide the necessary medical information by May 18. As of May 22, 2001, plaintiff had neither provided information nor contacted Caruso or Jezwinski as to her status. Accordingly, Caruso and Jack Duwe, DoIT Deputy Chief Information Officer, wrote plaintiff stating that she had until June 1, 2001 to contact Caruso with any information she had to show why DoIT should not terminate her position. As of June 4, 2001, plaintiff had still not contacted either Caruso or Jezwinksi. Consequently, by letter dated June 5, 2001, plaintiff was notified that her position was terminated effective June 1, 2001.

On October 17, 2001, plaintiff filed a discrimination complaint against defendant with the State of Wisconsin Personnel Commission. The commission served the complaint on defendant by letter dated October 25, 2001. On October 26, 2001, the commission forwarded the complaint to the Equal Opportunity Commission. October 17, 2001 is 300 days after December 21, 2000 and 180 days after April 20, 2001.

## OPINION

### A. *Retaliation*

Title VII makes it an unlawful employment practice "for an employer to discriminate against any of his employees ... because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a); *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 982 (7th Cir. 2004). Plaintiff argues that because she participated in an investigation of Harper

in June 2000, Jezwinski retaliated against her by encouraging her to resign in December 2000, terminating her health insurance policy and not allowing her to return to work 10 hours each week. In addition, plaintiff points out that her friend, Sharon Pero, tried convincing her to change her story about Harper.

 An employee may pursue a retaliation charge in one of two ways: 1) the direct method, using either direct or circumstantial evidence; or 2) the indirect method, based on the burden shifting analysis in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Wyninger*, 361 F.3d at 981. Under the direct method, an employee "must show that she engaged in protected activity and suffered an adverse employment action as a result." *Id.* Direct evidence essentially "requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Cerutti v. BASF Corporation*, 349 F.3d 1055, 1061 (7th Cir.2003). A plaintiff that lacks evidence of such an admission can construct a "convincing mosaic of circumstantial evidence that points directly to a discriminatory reason for the employer's action." *Davis v. Con–Way Transportation Central Express, Inc.*, 368 F.3d 776, 783 (7th Cir. 2004). For example, evidence "that a defendant's explanation for an employment practice is 'unworthy of credence' is 'one form of circumstantial evidence that is probative of intentional discrimination.'" *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003) (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). A plaintiff may rely on decision makers' remarks or behavior that either acknowledges discriminatory intent or more ambiguously supports an inference of discrimination. *Troupe v. May Department Stores Co.*, 20

F.3d 734, 736 (7th Cir.1994). In addition, a plaintiff may show that similarly situated employees were given more favorable treatment. *Id.* Finally, a plaintiff may show that she was qualified for the job but replaced by someone outside her protected class and that the employer's stated reasons for the job action are unworthy of belief. *Id.*

■ The record contains no direct evidence of retaliation. Therefore, the parties must rely on circumstantial evidence, which can be used with either the direct or indirect method. Assuming that plaintiff's participation in the June 2000 investigation against Harper was protected activity and that Jezwinski's actions were adverse employment actions under Title VII, the direct or indirect methods still demand causation: plaintiff's participation in the investigation must have caused Jezwinski to take those actions. In *Thomas v. Ragland,* 324 F.Supp.2d 950, 974–75 (W.D.Wis. 2004), I noted that the Court of Appeals for the Seventh Circuit in *Spiegla v. Hull,* 371 F.3d 928, 943 n. 10 (7th Cir.2004), had concluded that "the causation analysis is the same for retaliation cases brought under Title VII and the First Amendment." Therefore, to show causation in Title VII retaliation cases, a plaintiff must show that "the protected conduct was a substantial or motivating factor in the decision." *Thomas,* 324 F.Supp.2d at 975. If a plaintiff can make this showing, the burden of persuasion shifts to the defendant to show that it would have made the same decision without regard to the plaintiff's protected conduct. *Id.* at 973–74. "[E]ven if the employer proves that it would have taken the same action in the absence of the impermissible factor, the plaintiff may still obtain declaratory relief, some forms of injunctive relief and attorney fees." *Id.;* 42 U.S.C. § 2000e–5(g)(2)(B).

■ Plaintiff offers nothing in her proposed findings of fact to suggest a link between her participation in the June 2000 investigation and Jezwinski's treatment of her. She proposes no facts suggesting that Jezwinski knew about the investigation and that plaintiff was involved in it or that Jezwinski had any connection to Harper. It is undisputed that as of July 2000, Harper was no longer plaintiff's supervisor. However, Jezwinski's alleged retaliatory acts did not begin until after plaintiff took medical leave in November 2000. Without any evidence showing a connection between the alleged acts of retaliation and her participation in the June 2000 investigation, plaintiff's retaliation claim fails. (Plaintiff fails to state why her friend's encouragement to change her story about Harper has any relevance or connection to the alleged acts of retaliation by Jezwinski.) Therefore, I will grant defendant's motion regarding plaintiff's retaliation claim.

### B. *Discrimination*

■ Title VII prohibits employers from discriminating against employees or applicants with respect to compensation, terms, conditions, or privileges of employment on the basis of race, sex, religion or national origin. *Wyninger,* 361 F.3d at 978. As in the retaliation context, a plaintiff establishes a discriminatory employment practice when she demonstrates that her race or national origin was a "motivating factor" in the employer's decision. 42 U.S.C. § 2000e–2(m); *see also Venters v. City of Delphi,* 123 F.3d 956, 973 n. 7 (7th Cir. 1997). In other words, the plaintiff must prove that her race or national origin was one of the reasons that the employer took adverse action against her. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 250, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). As before, the plaintiff may use direct or circumstantial evidence to meet this burden. *Desert Palace,* 539 U.S. at 99, 123 S.Ct. 2148. Once a plaintiff demonstrates that

race or national origin was a motivating factor in an employment practice, the employer may limit its liability by demonstrating that it "would have taken the same action in the absence of the impermissible motivating factor." *Id.* at 94–95, 123 S.Ct. 2148.

■ As with her retaliation claim, plaintiff presents no direct evidence of discrimination. Her circumstantial evidence is weak at best as to Harper and nonexistent as to Jezwinski. Plaintiff argues that Harper discriminated against her by questioning her about how long she had been in the United States, criticizing Eritrean items and foods, making comments about minorities, acting disrespectfully towards her and threatening and intimidating her. It is questionable whether the majority of these questions, comments and actions were discriminatory in nature because plaintiff provides little information about how Harper treated other employees. The closest plaintiff comes to showing discriminatory intent is her allegation that Harper criticized her for wanting to display Eritrean art but allowed white, American-born coworkers to display whatever art they wanted. However, even if all of Harper's actions were deemed discriminatory, they occurred outside the statutory period for filing a claim. In Wisconsin, "[a] person claiming discrimination under Title VII is required to file a complaint with either the Equal Employment Opportunity Commission or [the Wisconsin Personnel Commission] within 300 days of the alleged discrimination." *Alexander v. Wisconsin Dept. of Health & Family Services*, 263 F.3d 673, 680 n. 1 (7th Cir.2001); 42 U.S.C. 2000e–5(e).

■ It is undisputed that plaintiff filed a discrimination complaint with the Wisconsin Personnel Commission on October 17, 2001, which is 300 days after December 21, 2000. It is undisputed also that Harper was no longer plaintiff's supervisor as of

July 27, 2000, almost five months before the 300–day cut off. Therefore, any discriminatory acts by Harper are time-barred. As for the claims against Jezwinski, plaintiff fails to propose any facts showing that Jezwinski harbored any discriminatory animus toward her. In fact, many of Jezwinksi's actions could be labeled generous. It is undisputed that Jezwinski worked with plaintiff to help her earn a paid holiday on January 15, 2001 and approved several requests for leave despite plaintiff's untimely submission of medical documentation that must accompany such requests. Plaintiff does not dispute that many times she failed to return to work on the day she had planned, failed to notify anyone of her intention to extend her leave and failed to submit the required medical documentation for her leave in a timely fashion. Plaintiff's purposeful defiance of her own promises and her employer's rules provide sufficient justification for her termination in June 2001. Plaintiff points to no evidence showing that Jezwinski or anyone else at her former employer treated others differently who made similar leave requests. Accordingly, I will grant defendant's motion for summary judgment as to plaintiff's discrimination claim.

### C. *Hostile Environment*

■ Acknowledging that Harper's conduct falls outside the 300–day statute of limitations period, plaintiff argues for the application of the continuing violation doctrine because Jezwinski continued Harper's abuse. "In order for a charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment." *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 115–18, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (stating that hostile environment claims different in kind from discrete acts of discrimina-

tion). To survive summary judgment on a hostile work environment claim under Title VII, the employee must show: "(1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability." *Williams v. Waste Management of Illinois,* 361 F.3d 1021, 1029 (7th Cir.2004); *see also Mason v. Southern Illinois Univ. at Carbondale,* 233 F.3d 1036, 1043 (7th Cir.2000). With respect to the severe and pervasive prong, a plaintiff must show that the work environment was "one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Cerros v. Steel Technologies, Inc.,* 288 F.3d 1040, 1045 (7th Cir.2002). In determining whether a party has made this showing, courts examine "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Russell v. Bd. of Trustees of Univ. of Illinois at Chicago,* 243 F.3d 336, 343 (7th Cir.2001) (internal citations omitted).

 I disagree with plaintiff that Jezwinski continued Harper's abusive behavior. Even if I assume that Harper harassed plaintiff because of her race, as noted earlier, plaintiff fails to propose any facts showing a link between Harper and Jezwinski or that Jezwinski discriminated against her. Because of these failures, no reasonable jury could view plaintiff's hostile environment claim under the continuing violation doctrine. "A court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." *Morgan,* 536

U.S. at 120, 122 S.Ct. 2061. Therefore, if Harper engaged in any harassment of plaintiff, those acts fall outside the 300–day time period and may not serve as the basis for a hostile work environment claim. Moreover, plaintiff's repeated abuse of her employer's leave request rules and her own promises provided sufficient reason for defendant to terminate her employment. Accordingly, I will grant defendant's motion for summary judgment as to plaintiff's hostile work environment claim.

## ORDER

IT IS ORDERED that

1. Defendant Board of Regents of the University of Wisconsin System's motion for summary judgment is GRANTED as to all of plaintiff Rachele Garrott's claims;

2. The clerk of court is to enter judgment in favor of defendant and close this case.