OPINION OF THE COURT
COHILL, Senior District Judge.
Herman Perez and his wife, Dianna Perez, appeal from the District Court’s order granting the defendants’ motion for summary judgment and dismissing all of the plaintiffs’ claims against the defendants with prejudice.** For the reasons that follow, we will affirm the grant of summary judgment on the violation of freedom of speech, negligent infliction of emotional distress, and loss of consortium claims and will reverse the grant of summary judgment on the discrimination based on national origin and freedom of association claims. We will remand to the District Court for further proceedings.
I.
The District Court had jurisdiction pursuant to 28 U.S.C. § 1332; this Court has jurisdiction pursuant to 28 U.S.C. § 1291. When reviewing an order granting summary judgment, “[w]e exercise plenary review ... and we apply the same standard that the lower court should have applied.” Farrell v. Planters Lifesavers Co., 206 F.3d 271, 278 (3d Cir.2000). Summary judgment is appropriate “if the pleadings, the discovery and disclosure materials on *760 file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(c)(2). In making this determination, we “view the facts in the light most favorable to the nonmoving party and draw all inferences in that party’s favor.” Farrell, 206 F.3d at 278 (citation omitted). “There must, however, be sufficient evidence for a jury to return a verdict in favor of the nonmoving party; if the evidence is merely colorable or not significantly probative, summary judgment should be granted.” Armbruster v. Unisys COrp., 32 F.3d 768, 777 (3d Cir.1994).
Where the non-moving party will bear the burden of proof at trial, the moving party’s burden can be “discharged by ‘showing’ ... that there is an absence of evidence to support the nonmoving party’s case.” Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party has carried this burden, the burden shifts to the non-moving party to point to sufficient cognizable evidence to create material issues of fact “such that a reasonable jury could find in its favor.” McCabe v. Ernst & Young, LLP, 494 F.3d 418, 424 (3d Cir.2007) (citing Fed.R.Civ.P. 56(e)); see Celotex, 477 U.S. at 332, 106 S.Ct. 2548. “[Cjonclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment. Instead, the affiant must set forth specific facts that reveal a genuine issue of material fact.” Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 161 (3d Cir.2009) (citing Blair v. Scott Specialty Gases, 283 F.3d 595, 608 (3d Cir.2002); Maldonado v. Ramirez, 757 F.2d 48, 51 (3d Cir.1985)).
II.
Plaintiff Herman Perez (“Perez”), who is Hispanic, was hired as a police officer by Defendant New Jersey Transit Police Department (“NJTPD”) on January 7, 2002 for a one-year probationary period. (App. 187, 263) Defendant New Jersey Transit Corporation is the parent corporation of Defendant NJTPD. Prior to being employed with the NJTPD Perez had been employed as a Sheriffs officer for the Hudson County, New Jersey Sheriffs Office (“HCSO”) for four years. (App.101)
The plaintiffs’ complaint contained twelve (12) claims against each of the defendants. The plaintiffs appeal the District Court’s grant of summary judgment in favor of the defendants on all of then-claims with the exception of the court’s grant of summary judgment in favor of the defendants on Count Three of the complaint which contained a 42 U.S.C. § 1983 claim based upon due process violations during the investigation and termination of Perez. Because we write only for the parties, who are fully familiar with the facts of this case, we move directly to the issues in dispute on appeal.
III.
The plaintiffs first argue that the District Court erred when it failed to apply the Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), mixed-motive analysis to the wrongful termination based on national origin discrimination claims in light of the racist remarks uttered by the decision maker, Defendant Joseph Bober (“Chief Bober”), prior to the adverse employment action. Chief Bober is Caucasian and the former Chief of Police for the NJTPD. (App.380)
Our federal law analysis applies equally to New Jersey state law discrimination claims. See Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 305 (3d Cir.2004). The standards of proof in a mixed-motive case were set forth by Congress in the Civil Rights Act of 1991. See Desert Palace, Inc. v. Costa, 539 U.S. 90, 94, 123 *761 S.Ct. 2148, 156 L.Ed.2d 84 (2003) (quoting Landgraf v. USI Film Prods., 511 U.S. 244, 251, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)) (noting that “ § 107 of the 1991 Act ... ‘responded’ to Price Waterhouse by ‘setting forth standards applicable in mixed motive cases in two new statutory provisions’.”). Under the Civil Rights Act of 1991, a mixed-motive plaintiff may establish an unlawful employment practice by demonstrating “that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.” 42 U.S.C. § 2000e-2(m).
A plaintiff is not required to present “direct evidence of discrimination in order to obtain a mixed-motive instruction under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.” Desert Palace, 539 U.S. at 92, 123 S.Ct. 2148. A plaintiff who has circumstantial evidence of discrimination may choose to proceed under either the mixed-motive theory of Price Waterhouse or the burden shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).
Turning to the relevant evidence of record viewed in a light most favorable to the plaintiffs as the non-moving party, Perez was asked at his deposition “why was Bo-ber out to get you?” (App.277) In response, Perez stated:
He has a history of racism, according to his lieutenants and his sergeants and the females on the job. He scared me one day when I walked by. I was in Maple-wood. I walked by the office, and two officers were in there, and he was talking about niggers and spies, how he was going to weed them out. And how they weren’t going to get past his test, because he was going to institute a new test now.
(App.277) Perez also stated in an Affidavit that “defendant Bober loudly stated in my presence that he would not allow ‘Spies and Niggers’ to run his department within very close earshot of me. I know that Bober directed that comment at me and knew I was in the next room.” (App.629)
While the District Court determined that this statement was an “isolated incident,” we find that a reasonable jury could conclude that the statement demonstrates that Perez’s national origin was a motivating factor for Chief Bober’s decision to terminate him. Accordingly, the District Court erred when it did not apply a mixed-motive analysis to the national origin discrimination claims.
IV.
The plaintiffs also argue that the District Court erred in its application of the McDonnell Douglas Corp. v. Green analysis to the facts of the case because the plaintiffs presented sufficient evidence to raise triable issues of fact that the defendants’ purported legitimate nondiscriminatory reason for terminating Perez was a pretext to hide their true discriminatory intent. The legitimate non-discriminatory reason proffered by the defendants for why Chief Bober decided to terminate Perez was the filing of a complaint against him by his neighbor Susan Rivera (“Ms. Rivera”) and his refusal to cooperate with the NJTPD’s Office of Internal Affairs investigation of the complaint.
In its Opinion, the District Court concluded that the plaintiffs had not established that the defendants’ legitimate nondiscriminatory reason for terminating Perez was a pretext for discrimination. We disagree. To the contrary, we find that the following evidence of record viewed in a light most favorable to the plaintiffs, is evidence upon which a factfin-der reasonably could “believe that an invidious discriminatory reason was more likely than not a motivating or determina *762 tive cause of the employer’s action.” Id. at 764.
First, Mary Frances Rabadeau, who immediately preceded Chief Bober as the Chief of Police at the NJTPD, testified that her experience with Chief Bober was that he was biased against minorities. For example, she testified that Chief Bober improperly administered an exam for probationary officers in a manner that disfavored female and minority officers.
Second, in or about October, 2002, Chief Bober stated to two other NJTPD officers that he was going to weed out the “niggers and spies” from the NJTPD, and by early January, 2003, Chief Bober had terminated Perez, who is Hispanic.
Third, Gerard Robson, Perez’s supervisor, explained that it was NJTPD policy that minor complaints, “discourtesy and stuff like that,” would be referred immediately to the supervisor of an individual to be handled at that level and sent back up the line; yet, with respect to Ms. Rivera’s Complaint against Perez, Robson was not involved at all in the investigation but rather, Internal Affairs kept control of the investigation. (App.570)
Finally, despite the existence of numerous ethnic-based organizations active at the NJTPD, when Chief Bober terminated Perez, the only ethnic organization he referred to was a Hispanic organization. Accordingly, the District Court erred when it granted summary judgment in favor of the defendants on the emotional distress (count one), retaliation (counts two, seven, eight, nine, and ten), and conspiracy (counts four and twelve) claims based upon its determination that the plaintiffs had not established a genuine issue of material fact that the defendants’ articulated reasons for Perez’s termination were a pretext for discrimination.
V.
The plaintiffs next argue that the District Court erred when it granted summary judgment in favor of the defendants on the freedom of speech claims. There are two statements at issue. The first one was made by Perez to Defendant John Ricciardi (“Captain Ricciardi”) and Defendant Richard Goldstein (“Investigator Goldstein”) during the November 12, 2002 internal affairs investigation interview concerning Ms. Rivera’s complaint against Perez. During the relevant time period, Captain Ricciardi and Investigator Gold-stein worked in the internal affairs department of the NJTPD. (App.410) Ricciardi was a Lieutenant and later a Captain; Goldstein was an Investigator. (App.139, 474)
At the end of the interview all those present were discussing how Perez was not to have contact with Ms. Rivera and that if she approached him, he was to contact Captain Ricciardi immediately. (App.131-132) A discussion began as to what Perez was to do if Ms. Rivera approached him and put a gun to Perez’s face or otherwise approached him. (App. 132) During this conversation, Perez asked “I wonder what the Attorney General would say if he knew that we’re encouraged to run away or to turn away from crimes? I would be interested in knowing what the Attorney General would have to say to something like that.” (App.132)
The second statement at issue was the statement Perez made to Sergeant Pat Clarke concerning violations of the AG Guidelines that Perez said he observed at the NJTPD whereby officers, both Hispanic and non-Hispanic, were denied procedural protections guaranteed to them with regard to Internal Affairs investigations: “I voiced concerns over the method of investigating. And how investigations, if they’re minor, discipline should go to your *763 immediate supervisor; and how in this department, Ricciardi and Goldstein running Internal Affairs, were not, were not following the guidelines. And they have their own policy and procedure.” (App.246-247)
“To state a First Amendment retaliation claim, a public employee plaintiff must allege that his activity is protected by the First Amendment, and that the protected activity was a substantial factor in the alleged retaliatory action.” Gorum v. Sessoms, 561 F.3d 179, 184 (3d Cir.2009). “The first factor is a question of law; the second factor is a question of fact.” Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir.2006).
“A public employee’s statement is protected by the First Amendment when, ‘(1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have “an adequate justification for treating the employee differently from any other member of the general public” as a result of the statement he made.’ ” Gorum, 561 F.3d at 185 (citations omitted). Moreover:
“Whether an employee’s speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record.” “The content of speech on a matter of public concern generally addresses a social or political concern of the community,” thus implicating significant First Amendment concerns.”
Id. at 187 (citations omitted).
Focusing on the content, form, and context of Perez’s statement made to Captain Ricciardi and Investigator Gold-stein during the November 12, 2002 internal affairs investigation interview, the District Court correctly found that this statement does not constitute protected speech. Similarly, focusing on the content, form, and context of Perez’s complaint to Sergeant Clarke, the District Court correctly concluded that such a statement does not constitute protected speech; even viewed in a light most favorable to the plaintiffs, Perez’s statement to Sergeant Clarke encompassed both minority and non-minority officers being denied certain procedural protections and did not contain any allegations that the denial was based upon the officers’ race, gender, or national origin.
Even assuming, however, that both of these statements qualified as speech protected under the First Amendment, and that the District Court erred in concluding otherwise, we would still affirm the District Court’s grant of summary judgment in favor of the defendants on the plaintiffs’ freedom of speech claims due to a complete lack of evidence establishing the causation element of the plaintiffs’ freedom of speech claim. The District Court correctly found that there was not such an “unusually suggestive” proximity in time between the alleged protected speech, one statement made November 2002 and the other at an unknown time, and the adverse action of Perez’s termination in January 2003, that this single fact raises a genuine issue of material fact as to the requisite causal connection. See Marra v. Phila. Hous. Auth., 497 F.3d 286, 302 (3d Cir.2007). The District Court also correctly concluded that causation was not established by Chief Bober’s comment about a Hispanic organization at the time of Perez’s termination, especially since there was nothing in the record to support the conclusion that Chief Bober was even aware of any of the statements made by Perez to Captain Ricciardi and Investigator Goldstein or to Sergeant Clarke prior to his decision to terminate Perez. See Ambrose v. Twp. of Robinson, Pa., 303 F.3d 488, 493 (3d Cir.2002).
*764 Accordingly, the District Court did not err when it granted summary judgment in favor of the defendants with respect to the freedom of speech claims.
VI.
The plaintiffs also argue that the District Court erred when it granted summary judgment in favor of the defendants on the freedom of association claim. They contend that Pei*ez’s termination was due to the lawful exercise of his right of association, that is, Perez’s formation of and participation in the Hispanic Law Enforcement Association (“HLEA”). It is undisputed that this activity is protected under the First Amendment.
As with the freedom of speech claim, in order to establish that the defendants violated Perez’s right to freedom of association, the plaintiffs must demonstrate that Perez’s protected conduct was a “substantial or motivating factor” in Chief Bober’s decision to terminate him. See Rode v. Dellarciprete, 845 F.2d 1195, 1204 (3d Cir. 1988) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).
The District Court concluded that the plaintiffs did not establish a genuine issue of material fact that the defendants interfered with Perez’s association with HLEA. Contrary to the District Court’s conclusion, we find that in light of Chief Bober’s statement, made at the time of Perez’s termination, that no “Hispanic organization” was “going to stand up to [him] and undermine [his] authority,” a reasonable jury could conclude that Perez’s protected association with HLEA was a substantial or motivating factor in Chief Bober’s decision to terminate Perez. Accordingly, the District Court erred when it granted the defendants’ motion for summary judgment on the freedom of association claim.
VIL
Finally, the plaintiffs argue that the District Court erred when it dismissed the plaintiffs’ emotional distress and loss of consortium claims.
With respect to the emotional distress claim, N.J.S.A. 59:9-2d requires that a plaintiff seeking pain and suffering damages against a public entity or public employee such as the defendants must show that he suffered: (1) an objective permanent injury constituting at least $3,600 in medical treatment expenses and (2) a permanent loss of a substantial bodily function. See Knowles v. Mantua Tp. Soccer Ass’n, 176 N.J. 324, 329, 823 A.2d 26, 29 (2003).
The only evidence submitted in support of the claim of an objective permanent injury was a psychologist’s report that stated that Perez suffered from mixed anxiety and depression and that some of his symptoms “may be permanent.” (App. 548) This report does not raise a genuine issue of material fact as to whether Perez suffered an objective permanent injury. Therefore, the District Court properly dismissed the emotional distress claim.
With respect to Mrs. Perez’s loss of consortium claim, the District Court concluded that because Perez’s tort claims were subject to dismissal, his wife’s derivative loss of consortium claim also was subject to dismissal. We agree. Because the emotional distress claim against the defendants has been dismissed, Mrs. Perez’s derivative claim for loss of consortium cannot proceed and must be dismissed. The District Court correctly dismissed the loss of consortium claim.
vm.
For the reasons articulated above, we will affirm the grant of summary judgment on the freedom of speech claims (counts *765 two and five), negligent infliction of emotional distress claim (count one), and loss of consortium claim (count eleven) and will reverse the grant of summary judgment on the discrimination based upon national origin claims (counts four, six, seven, eight, nine, ten and twelve) and freedom of association claim (count two). We remand the matter to the District Court for further proceedings consistent with this Opinion. Costs to be taxed against appellants.

 Plaintiff Dianna Perez’s only claim is for loss of consortium, a claim entirely derivative of her husband’s claims. Therefore, in discussing the operative facts, our references to plaintiff, in the singular, are to Herman Perez.