# DESERT PALACE, INC., DBA CAESARS PALACE HOTEL & CASINO *v.* COSTA

No. 02-679.   Argued April 21, 2003—Decided June 9, 2003

THOMAS, J., delivered the opinion for a unanimous Court. O'CONNOR, J., filed a concurring opinion, *post*, p. 102.

*Mark J. Ricciardi* argued the cause for petitioner. With him on the briefs were *Roger K. Quillen, Paul A. Ades,* and *Corbett N. Gordon.*

*Irving L. Gornstein* argued the cause for the United States as *amicus curiae.* On the brief were *Solicitor General Olson, Assistant Attorneys General McCallum* and *Boyd, Deputy Solicitor General Clement, Dennis J. Dimsey,* and *Teresa Kwong.*

*Robert N. Peccole* argued the cause for respondent. With him on the brief was *Eric Schnapper.**

JUSTICE THOMAS delivered the opinion of the Court.

The question before us in this case is whether a plaintiff must present direct evidence of discrimination in order to obtain a mixed-motive instruction under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 (1991 Act). We hold that direct evidence is not required.

## I

### A

Since 1964, Title VII has made it an "unlawful employment practice for an employer . . . to discriminate against any indi-

---

*\*Ann Elizabeth Reesman, Katherine Y. K. Cheung, Stephen A. Bokat,* and *Ellen D. Bryant* filed a brief for the Equal Employment Advisory Council et al. as *amici curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the American Federation of Labor and Congress of Industrial Organizations by *Jonathan P. Hiatt, James B. Coppess,* and *Laurence Gold;* for the Association of Trial Lawyers of America by *Jeffrey L. Needle;* for the Lawyers' Committee for Civil Rights Under Law et al. by *Michael C. Subit, Barbara R. Arnwine, Thomas J. Henderson, Michael L. Foreman, Kristin M. Dadey, Thomas W. Osborne, Laurie A. McCann, Daniel B. Kohrman, Melvin Radowitz, Lenora M. Lapidus, Vincent A. Eng, Judith L. Lichtman, Jocelyn C. Frye,* and *Dennis C. Hayes;* and for Ann B. Hopkins by *Douglas B. Huron.*

*Ronald B. Schwartz* and *Jenifer Bosco* filed a brief for the National Employment Lawyers Association as *amicus curiae.*

vidual . . . , *because of* such individual's race, color, religion, sex, or national origin." 78 Stat. 255, 42 U. S. C. § 2000e–2(a)(1) (emphasis added). In *Price Waterhouse* v. *Hopkins,* 490 U. S. 228 (1989), the Court considered whether an employment decision is made "because of" sex in a "mixed-motive" case, *i. e.,* where both legitimate and illegitimate reasons motivated the decision. The Court concluded that, under § 2000e–2(a)(1), an employer could "avoid a finding of liability . . . by proving that it would have made the same decision even if it had not allowed gender to play such a role." *Id.,* at 244; see *id.,* at 261, n. (White, J., concurring in judgment); *id.,* at 261 (O'CONNOR, J., concurring in judgment). The Court was divided, however, over the predicate question of when the burden of proof may be shifted to an employer to prove the affirmative defense.

Justice Brennan, writing for a plurality of four Justices, would have held that "when a plaintiff . . . proves that her gender played a *motivating* part in an employment decision, the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender into account." *Id.,* at 258 (emphasis added). The plurality did not, however, "suggest a limitation on the possible ways of proving that [gender] stereotyping played a motivating role in an employment decision." *Id.,* at 251–252.

Justice White and JUSTICE O'CONNOR both concurred in the judgment. Justice White would have held that the case was governed by *Mt. Healthy City Bd. of Ed.* v. *Doyle,* 429 U. S. 274 (1977), and would have shifted the burden to the employer only when a plaintiff "show[ed] that the unlawful motive was a *substantial* factor in the adverse employment action." *Price Waterhouse, supra,* at 259. JUSTICE O'CON-NOR, like Justice White, would have required the plaintiff to show that an illegitimate consideration was a "substantial factor" in the employment decision. 490 U. S., at 276. But, under JUSTICE O'CONNOR's view, "the burden on the issue

of causation" would shift to the employer only where "a disparate treatment plaintiff [could] show by *direct evidence* that an illegitimate criterion was a substantial factor in the decision." *Ibid.* (emphasis added).

Two years after *Price Waterhouse,* Congress passed the 1991 Act "in large part [as] a response to a series of decisions of this Court interpreting the Civil Rights Acts of 1866 and 1964." *Landgraf* v. *USI Film Products,* 511 U. S. 244, 250 (1994). In particular, § 107 of the 1991 Act, which is at issue in this case, "respond[ed]" to *Price Waterhouse* by "setting forth standards applicable in 'mixed motive' cases" in two new statutory provisions.[1] 511 U. S., at 251. The first establishes an alternative for proving that an "unlawful employment practice" has occurred:

> "Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U. S. C. § 2000e–2(m).

The second provides that, with respect to "a claim in which an individual proves a violation under section 2000e–2(m)," the employer has a limited affirmative defense that does not absolve it of liability, but restricts the remedies available to a plaintiff. The available remedies include only declaratory relief, certain types of injunctive relief, and attorney's fees and costs. § 2000e–5(g)(2)(B).[2] In order to avail itself of

---

[1] This case does not require us to decide when, if ever, § 107 applies outside of the mixed-motive context.

[2] Title 42 U. S. C. § 2000e–5(g)(2)(B) provides in full:

"On a claim in which an individual proves a violation under section 2000e–2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court—

"(i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly

the affirmative defense, the employer must "demonstrat[e] that [it] would have taken the same action in the absence of the impermissible motivating factor." *Ibid.*

Since the passage of the 1991 Act, the Courts of Appeals have divided over whether a plaintiff must prove by direct evidence that an impermissible consideration was a "motivating factor" in an adverse employment action. See 42 U. S. C. § 2000e–2(m). Relying primarily on JUSTICE O'CONNOR's concurrence in *Price Waterhouse*, a number of courts have held that direct evidence is required to establish liability under § 2000e–2(m). See, *e. g., Mohr* v. *Dustrol, Inc.*, 306 F. 3d 636, 640–641 (CA8 2002); *Fernandes* v. *Costa Bros. Masonry, Inc.*, 199 F. 3d 572, 580 (CA1 1999); *Trotter* v. *Board of Trustees of Univ. of Ala.*, 91 F. 3d 1449, 1453–1454 (CA11 1996); *Fuller* v. *Phipps*, 67 F. 3d 1137, 1142 (CA4 1995). In the decision below, however, the Ninth Circuit concluded otherwise. See *infra*, at 97–98.

B

Petitioner Desert Palace, Inc., dba Caesar's Palace Hotel & Casino of Las Vegas, Nevada, employed respondent Catharina Costa as a warehouse worker and heavy equipment operator. Respondent was the only woman in this job and in her local Teamsters bargaining unit.

Respondent experienced a number of problems with management and her co-workers that led to an escalating series of disciplinary sanctions, including informal rebukes, a denial of privileges, and suspension. Petitioner finally terminated respondent after she was involved in a physical altercation in a warehouse elevator with fellow Teamsters member Herbert Gerber. Petitioner disciplined both employees because the facts surrounding the incident were in dispute, but

---

attributable only to the pursuit of a claim under section 2000e–2(m) of this title; and

"(ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A)."

Gerber, who had a clean disciplinary record, received only a 5-day suspension.

Respondent subsequently filed this lawsuit against petitioner in the United States District Court for the District of Nevada, asserting claims of sex discrimination and sexual harassment under Title VII. The District Court dismissed the sexual harassment claim, but allowed the claim for sex discrimination to go to the jury. At trial, respondent presented evidence that (1) she was singled out for "intense 'stalking'" by one of her supervisors, (2) she received harsher discipline than men for the same conduct, (3) she was treated less favorably than men in the assignment of overtime, and (4) supervisors repeatedly "stack[ed]" her disciplinary record and "frequently used or tolerated" sex-based slurs against her. 299 F. 3d 838, 845–846 (CA9 2002).

Based on this evidence, the District Court denied petitioner's motion for judgment as a matter of law, and submitted the case to the jury with instructions, two of which are relevant here. First, without objection from petitioner, the District Court instructed the jury that "'[t]he plaintiff has the burden of proving . . . by a preponderance of the evidence'" that she "'suffered adverse work conditions'" and that her sex "'was a motivating factor in any such work conditions imposed upon her.'" *Id.*, at 858.

Second, the District Court gave the jury the following mixed-motive instruction:

> "'You have heard evidence that the defendant's treatment of the plaintiff was motivated by the plaintiff's sex and also by other lawful reasons. If you find that the plaintiff's sex was a motivating factor in the defendant's treatment of the plaintiff, the plaintiff is entitled to your verdict, even if you find that the defendant's conduct was also motivated by a lawful reason.
>
> "'However, if you find that the defendant's treatment of the plaintiff was motivated by both gender and lawful reasons, you must decide whether the plaintiff is entitled

to damages. The plaintiff is entitled to damages unless the defendant proves by a preponderance of the evidence that the defendant would have treated plaintiff similarly even if the plaintiff's gender had played no role in the employment decision.'" *Ibid.*

Petitioner unsuccessfully objected to this instruction, claiming that respondent had failed to adduce "direct evidence" that sex was a motivating factor in her dismissal or in any of the other adverse employment actions taken against her. The jury rendered a verdict for respondent, awarding backpay, compensatory damages, and punitive damages. The District Court denied petitioner's renewed motion for judgment as a matter of law.

The Court of Appeals initially vacated and remanded, holding that the District Court had erred in giving the mixed-motive instruction because respondent had failed to present "substantial evidence of conduct or statements by the employer directly reflecting discriminatory animus." 268 F. 3d 882, 884 (CA9 2001). In addition, the panel concluded that petitioner was entitled to judgment as a matter of law on the termination claim because the evidence was insufficient to prove that respondent was "terminated because she was a woman." *Id.*, at 890.

The Court of Appeals reinstated the District Court's judgment after rehearing the case en banc. 299 F. 3d 838 (CA9 2002). The en banc court saw no need to decide whether JUSTICE O'CONNOR's concurrence in *Price Waterhouse* controlled because it concluded that JUSTICE O'CONNOR's references to "direct evidence" had been "wholly abrogated" by the 1991 Act. 299 F. 3d, at 850. And, turning "to the language" of § 2000e–2(m), the court observed that the statute "imposes no special [evidentiary] requirement and does not reference 'direct evidence.'" *Id.*, at 853. Accordingly, the court concluded that a "plaintiff . . . may establish a violation through a preponderance of evidence (whether direct or circumstantial) that a protected characteristic played 'a moti-

vating factor.'" *Id.*, at 853–854 (footnote omitted). Based on that standard, the Court of Appeals held that respondent's evidence was sufficient to warrant a mixed-motive instruction and that a reasonable jury could have found that respondent's sex was a "motivating factor in her treatment." *Id.*, at 859. Four judges of the en banc panel dissented, relying in large part on "the reasoning of the prior opinion of the three-judge panel." *Id.*, at 866.

We granted certiorari. 537 U. S. 1099 (2003).

## II

This case provides us with the first opportunity to consider the effects of the 1991 Act on jury instructions in mixed-motive cases. Specifically, we must decide whether a plaintiff must present direct evidence of discrimination in order to obtain a mixed-motive instruction under 42 U. S. C. § 2000e–2(m). Petitioner's argument on this point proceeds in three steps: (1) JUSTICE O'CONNOR's opinion is the holding of *Price Waterhouse;* (2) JUSTICE O'CONNOR's *Price Waterhouse* opinion requires direct evidence of discrimination before a mixed-motive instruction can be given; and (3) the 1991 Act does nothing to abrogate that holding. Like the Court of Appeals, we see no need to address which of the opinions in *Price Waterhouse* is controlling: the third step of petitioner's argument is flawed, primarily because it is inconsistent with the text of § 2000e–2(m).

Our precedents make clear that the starting point for our analysis is the statutory text. See *Connecticut Nat. Bank* v. *Germain,* 503 U. S. 249, 253–254 (1992). And where, as here, the words of the statute are unambiguous, the "'judicial inquiry is complete.'" *Id.*, at 254 (quoting *Rubin* v. *United States,* 449 U. S. 424, 430 (1981)). Section 2000e–2(m) unambiguously states that a plaintiff need only "demonstrat[e]" that an employer used a forbidden consideration with respect to "any employment practice." On its face, the statute does not mention, much less require, that a plaintiff

make a heightened showing through direct evidence. Indeed, petitioner concedes as much. Tr. of Oral Arg. 9.

Moreover, Congress explicitly defined the term "demonstrates" in the 1991 Act, leaving little doubt that no special evidentiary showing is required. Title VII defines the term "'demonstrates'" as to "mee[t] the burdens of production and persuasion." § 2000e(m). If Congress intended the term "'demonstrates'" to require that the "burdens of production and persuasion" be met by direct evidence or some other heightened showing, it could have made that intent clear by including language to that effect in § 2000e(m). Its failure to do so is significant, for Congress has been unequivocal when imposing heightened proof requirements in other circumstances, including in other provisions of Title 42. See, e. g., 8 U. S. C. § 1158(a)(2)(B) (stating that an asylum application may not be filed unless an alien "demonstrates by clear and convincing evidence" that the application was filed within one year of the alien's arrival in the United States); 42 U. S. C. § 5851(b)(3)(D) (providing that "[r]elief may not be ordered" against an employer in retaliation cases involving whistleblowers under the Atomic Energy Act where the employer is able to *"demonstrat[e] by clear and convincing evidence* that it would have taken the same unfavorable personnel action in the absence of such behavior" (emphasis added)); cf. *Price Waterhouse,* 490 U. S., at 253 (plurality opinion) ("Only rarely have we required clear and convincing proof where the action defended against seeks only conventional relief").

In addition, Title VII's silence with respect to the type of evidence required in mixed-motive cases also suggests that we should not depart from the "[c]onventional rul[e] of civil litigation [that] generally appl[ies] in Title VII cases." *Ibid.* That rule requires a plaintiff to prove his case "by a preponderance of the evidence," *ibid.,* using "direct or circumstantial evidence," *Postal Service Bd. of Governors* v. *Aikens,* 460 U. S. 711, 714, n.3 (1983). We have often acknowledged

the utility of circumstantial evidence in discrimination cases. For instance, in *Reeves* v. *Sanderson Plumbing Products, Inc.*, 530 U. S. 133 (2000), we recognized that evidence that a defendant's explanation for an employment practice is "unworthy of credence" is "one form of *circumstantial evidence* that is probative of intentional discrimination." *Id.*, at 147 (emphasis added). The reason for treating circumstantial and direct evidence alike is both clear and deep rooted: "Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Rogers* v. *Missouri Pacific R. Co.*, 352 U. S. 500, 508, n. 17 (1957).

The adequacy of circumstantial evidence also extends beyond civil cases; we have never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required. See *Holland* v. *United States*, 348 U. S. 121, 140 (1954) (observing that, in criminal cases, circumstantial evidence is "intrinsically no different from testimonial evidence"). And juries are routinely instructed that "[t]he law makes no distinction between the weight or value to be given to either direct or circumstantial evidence." 1A K. O'Malley, J. Grenig, & W. Lee, Federal Jury Practice and Instructions, Criminal § 12.04 (5th ed. 2000); see also 4 L. Sand, J. Siffert, W. Loughlin, S. Reiss, & N. Batterman, Modern Federal Jury Instructions ¶ 74.01 (2002) (model instruction 74–2). It is not surprising, therefore, that neither petitioner nor its *amici curiae* can point to any other circumstance in which we have restricted a litigant to the presentation of direct evidence absent some affirmative directive in a statute. Tr. of Oral Arg. 13.

Finally, the use of the term "demonstrates" in other provisions of Title VII tends to show further that § 2000e–2(m) does not incorporate a direct evidence requirement. See, *e. g.*, 42 U. S. C. §§ 2000e–2(k)(1)(A)(i), 2000e–5(g)(2)(B). For instance, § 2000e–5(g)(2)(B) requires an employer to "demon-

strat[e] that [it] would have taken the same action in the absence of the impermissible motivating factor" in order to take advantage of the partial affirmative defense. Due to the similarity in structure between that provision and §2000e–2(m), it would be logical to assume that the term "demonstrates" would carry the same meaning with respect to both provisions. But when pressed at oral argument about whether direct evidence is required before the partial affirmative defense can be invoked, petitioner did not "agree that . . . the defendant or the employer has any heightened standard" to satisfy. Tr. of Oral Arg. 7. Absent some congressional indication to the contrary, we decline to give the same term in the same Act a different meaning depending on whether the rights of the plaintiff or the defendant are at issue. See *Commissioner* v. *Lundy*, 516 U. S. 235, 250 (1996) ("The interrelationship and close proximity of these provisions of the statute 'presents a classic case for application of the "normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning"'" (quoting *Sullivan* v. *Stroop*, 496 U. S. 478, 484 (1990))).

For the reasons stated above, we agree with the Court of Appeals that no heightened showing is required under §2000e–2(m).[3]

*　　*　　*

In order to obtain an instruction under §2000e–2(m), a plaintiff need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that "race, color, religion, sex, or national origin was a motivating factor for any employment practice." Because direct evidence of discrimination is not required in mixed-motive

---

[3] Of course, in light of our conclusion that direct evidence is not required under §2000e–2(m), we need not address the second question on which we granted certiorari: "What are the appropriate standards for lower courts to follow in making a direct evidence determination in 'mixed-motive' cases under Title VII?" Pet. for Cert. i.

cases, the Court of Appeals correctly concluded that the District Court did not abuse its discretion in giving a mixed-motive instruction to the jury. Accordingly, the judgment of the Court of Appeals is affirmed.

*It is so ordered.*

JUSTICE O'CONNOR, concurring.

I join the Court's opinion. In my view, prior to the Civil Rights Act of 1991, the evidentiary rule we developed to shift the burden of persuasion in mixed-motive cases was appropriately applied only where a disparate treatment plaintiff "demonstrated by direct evidence that an illegitimate factor played a substantial role" in an adverse employment decision. *Price Waterhouse* v. *Hopkins,* 490 U. S. 228, 275 (1989) (O'CONNOR, J., concurring in judgment). This showing triggered "the deterrent purpose of the statute" and permitted a reasonable factfinder to conclude that "absent further explanation, the employer's discriminatory motivation 'caused' the employment decision." *Id.,* at 265.

As the Court's opinion explains, in the Civil Rights Act of 1991, Congress codified a new evidentiary rule for mixed-motive cases arising under Title VII. *Ante,* at 98–101. I therefore agree with the Court that the District Court did not abuse its discretion in giving a mixed-motive instruction to the jury.