UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued June 14, 2005
Decided September 9, 2005

**Before**

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 03-3971

| | |
|---|---|
| GWENDOLYN PRATER<br>    *Plaintiff-Appellant*,<br><br>    *v.*<br><br>JOLIET JUNIOR COLLEGE,<br>    *Defendant-Appellee*<br><br>APPEAL OF:  BRADLEY WALLER,<br>    Trustee, on behalf of the<br>    estate of GWENDOLYN<br>    PRATER. | Appeal from the United States<br>District Court for the Northern<br>District of Illinois, Eastern Division.<br><br>No. 00 C 1435<br><br>James B.  Zagel,<br>*Judge*. |

## O R D E R

Joliet Junior College hired Gwendolyn Prater in 1992.  In 1994 she became a "Recruitment Retention Specialist," working primarily to recruit and support students on public aid.  From 1994 until her termination in 1998, Joliet funded Prater's position through an annual $50,000 grant called "Public Aid Special Projects." At some point, Prater's salary and benefits increased to the point where other funding sources were necessary to supplement the PASP grant, and Prater was paid with funds from another grant.

In 1998 it became clear that the PASP grant would not be increased. In May, Dr. Terry Irby, Dean of Adult Education at Joliet and Prater's supervisor, informed Prater that her position could no longer be supported by the PASP grant funding. The parties agree that Irby then discussed the possibility of Prater continuing at Joliet in a different capacity. Up to that point, Prater worked primarily with "public aid students" as a condition of the PASP grant. Sometimes, though, she had apparently worked with non-public aid students (in proportion to the non-PASP funding that covered her salary and benefits), and once PASP funding became unavailable Irby asked Prater to work primarily with non-public aid students.

Joliet offered to continue Prater's employment in a different capacity, working with non-public aid students, but Prater allegedly refused and told Irby to "do what she has to do." Joliet asserts that Prater's unwillingness to transition to working with non-public aid students necessitated terminating her. Prater denied refusing to make the change, but adds that younger employees were paid extra for handling non-public aid students, and that Irby wanted her to do the work "for free." It is not clear from the pleadings whether Joliet intended that Prater take on the new non-public aid students without reducing her old responsibilities, thereby increasing her workload but not her pay, or whether she was expected to maintain the same workload by shifting her attentions to the new non-public aid students. In any event, the parties were not able to reach an accommodation. Prater asserts that she never refused to work with non-public aid clients but was fired instead because of her age. Prater further alleges, as evidence of Joliet's discriminatory motive, that Irby frequently and publicly commented that she was interested in getting rid of all of the older employees and replacing them with younger and more malleable workers. Irby counters that Prater refused to work primarily with non-public aid students, and that she voluntarily resigned rather than comply with the new requirements. Joliet terminated Prater on June 30, 1998, when the grant funding her position was not renewed.

Prater sued Joliet, alleging that her termination violated the Age Discrimination in Employment Act (ADEA) and that Joliet's rationale for firing her was pretextual. The district court granted summary judgment for Joliet, determining that there was no genuine issue of material fact as to why the college terminated Prater because the PASP grant "was not approved for the Outreach Recruitment position (the position in which Prater was employed)." The court held that the funding situation constituted a showing of at least a mixed motive.

On appeal Prater raises only a single argument, that she had presented sufficient evidence to create a genuine issue of material fact regarding pretext. She advances this argument by making seven factual assertions. These assertions are apparently intended to show first that Joliet actually could continue to fund her employment, and second that she was willing to take on new responsibilities and

continue her employment under a new funding scheme.  She characterizes these assertions as evidence that Joliet's stated reason for terminating her was pretextual.

Summary judgment was appropriate if Joliet showed an adequate nondiscriminatory motive for terminating Prater's position, even if there was also a discriminatory motive.  *See, e.g., Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100-101 (2003) (discussing mixed-motive standards in the context of Title VII litigation).  In order to prevail, Prater must demonstrate a genuine issue of material fact as to whether Joliet's stated need to terminate her position was merely pretextual: "If the plaintiff fails to satisfy the factfinder that it is more likely than not that a forbidden characteristic played a part in the employment decision, then she may prevail only if she proves, following [*Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981)], that the employer's stated reason for its decision is pretextual." *Price Waterhouse*, 490 U.S. at 247.

Prater first asserts that the district court overlooked an issue of material fact as to whether Joliet was forced to terminate her position for non-discriminatory financial reasons.  Prater points out that a supervisor who left shortly before she did testified that there was "no financial problem when she left," and that Joliet was awarded $72,000 in "performance money" as a reward for recruiting and retaining students under the PASP program––money that Prater contends could have been used to fund her employment.  However, Prater has not presented any evidence that this money was allocable to fund her position, and Irby testified that extra funds for her department's "work performance" were allocated to the college itself and not available to her department.  Because Prater does not contest Irby's characterization of the funding situation, there is no genuine issue of material fact as to whether Joliet could afford to fund Prater's position.

Prater also argues that Joliet showed that it could afford to pay replacements to perform her duties when, after her termination, it advertised for two positions "conducting student retention and follow-up" and subsequently filled those positions.  However, Prater's purported evidence does not show that Joliet's stated motive for terminating her was pretextual.  Prater offered no evidence to contest Joliet's contention that she and the new hires were in substantially different positions, at different pay grades, and performing different functions within the office.  Prater offered only testimony from one witness, who speculated that a new hire had replaced Prater, but this witness had no direct, firsthand knowledge of the new hire's duties or classification.

Prater also seems to argue that a factual issue exists as to whether she actually refused to work with non-public aid students, a condition Joliet placed on continuing her employment in a different capacity once the PASP funding ended.

She appears to assert, without elaborating, that Joliet was not forced to terminate her, and that it could have continued to employ her under other, less restrictive grants.  But Prater does not substantiate this argument, however, and summary judgment was therefore properly granted against her on this claim.

The grant of summary judgment is AFFIRMED.