Dustin MINYARD, Jeremy Dutch, and Justin Clark, Individually and on behalf of all others similarly situated, Plaintiffs;

v.

DOUBLE D TONG, INC., Robert Duncan, and Cody Duncan, Defendants.

NO. MO:16–CV–00313–RAJ

United States District Court, W.D. Texas, Midland-Odessa Division.

Signed 02/27/2017

Order Granting Reconsideration March 22, 2017

**482**

Jesse Hamilton Forester, J. Derek Braziel, Lee & Braziel, LLP, Jack Siegel, Siegel Law Group PLLC, Dallas, TX, for Plaintiffs.

Lisa K. Hooper, Randall L. Rouse, Lynch, Chappell & Alsup, P.C., Midland, TX, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION

ROBERT JUNELL, SENIOR UNITED STATES DISTRICT JUDGE

BEFORE THE COURT is Plaintiffs Dustin Minyard, Jeremy Dutch, and Justin Clark's (collectively, "Plaintiffs") First Stage Motion for Notice to Potential Plaintiffs and Conditional Certification. (Doc. 29). After due consideration of the pleadings and the relevant law, Plaintiffs' Motion for Conditional Certification shall be **GRANTED** in part and **DENIED** in part.

### I. BACKGROUND

Plaintiffs bring this action both individually and on behalf of all others similarly situated against Defendants Double D Tong, Inc., Robert Duncan, and Cody Duncan (collectively, "Defendants"), asserting violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* (Doc. 22). Plaintiffs filed this lawsuit on August 19, 2016. (Doc. 1). On October 3, 2016, Defendants filed their Answer. (Doc. 19). On November 4, 2016, Plaintiffs filed their First Amended Complaint. (Doc. 22). On January 9, 2017, Plaintiffs filed their Second Amended Complaint. (Doc. 28).

Defendants are involved in oilfield casing services in oilfields throughout the United States. (*Id.* at 1). Defendants employ individuals to provide casing services at jobsites. (*Id.*). Plaintiffs contend they and the putative class members "regularly work in excess of 40 hours per workweek." (*Id.*). Plaintiffs assert Defendants violated the FLSA by failing to pay non-exempt employees (1) an overtime premium for all overtime hours worked; or (2) overtime at

the legally required rate. (*Id.*). Defendants paid Plaintiffs and the putative class "based on the quantity of work performed, including specifically on a (1) per-foot-of-pipe-laid basis; and (2) per-job or per-assignment basis." (*Id.* at 2).

On January 31, 2017, Plaintiffs filed their Motion for Conditional Certification. (Doc. 29). Plaintiffs bring this lawsuit as a collective action on behalf of themselves and the following class of potential FLSA opt-in plaintiffs:

> All workers employed by Defendants in the United States over the last three years who were paid in whole or in part on a quantity basis (whether pay per foot, pay per job, or some other measure) or whose overtime compensation was calculated based on a regular rate that excluded Additional Pay, including but not limited to non-discretionary bonus, safety bonus and truck allowance pay. Additional Pay specifically excludes hourly pay and quantity based pay for casing work, but includes all other pay received by [Casing Employees].

(*Id.* at 5–6).

On February 7, 2017, Defendants filed their Response to the Motion for Conditional Certification. (Doc. 30). Defendants argue that Plaintiffs' proposed class is overly broad. (*Id.* at 5). Defendants employed two of the Plaintiffs as Field Hands and one as a Crew Pusher but Plaintiffs seek conditional certification of a class including "[a]ll workers" employed by Defendants who were paid similarly to Plaintiffs. (*Id.*). As such, Defendants urge the Court to deny Plaintiffs' Motion for Conditional Certification. (*Id.* at 7).

## II. LEGAL STANDARD

An employee may bring an action for violating the minimum wage and overtime provisions of the FLSA either individually or as a collective action on behalf of himself and "other employees similarly situated." 29 U.S.C. § 216(b). Unlike a class action filed under Federal Rule of Civil Procedure 23(c), a collective action under Section 216(b) provides for a procedure to "opt-in," rather than "opt-out." *Roussell v. Brinker Int'l, Inc.*, 441 Fed.Appx. 222, 225 (5th Cir. 2011) (unpublished) (citing *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 (5th Cir. 2008)). Although the United States Court of Appeals for the Fifth Circuit has declined to adopt a specific test to determine when a court should conditionally certify a class or grant notice in a case brought under the FLSA, the majority of courts within the Fifth Circuit have adopted the *Lusardi* two-stage approach, after *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987).[1]

The two stages of the *Lusardi* approach are the "notice stage" and the "decertification stage." *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1216 (5th Cir. 1995), overruled on other grounds by *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). At the notice stage, the district court "determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 (5th Cir. 2010). "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certifica-

---

1. *See, e.g., Vanzzini v. Action Meat Distribs., Inc.*, 995 F.Supp.2d 703, 719 (S.D. Tex. 2014) (applying *Lusardi*); *Mateos v. Select Energy Servs., LLC*, 977 F.Supp.2d 640, 643 (W.D. Tex. 2013) (same); *Tice v. AOC Senior Home Health Corp.*, 826 F.Supp.2d 990, 994 (E.D. Tex. 2011) (same); *Marshall v. Eyemasters of Tex., Ltd.*, 272 F.R.D. 447, 449 (N.D. Tex. 2011) (same).

tion' of a representative class." *Mooney*, 54 F.3d at 1214. If the court finds that the putative class members are similarly situated, then conditional certification is warranted and the plaintiff will be given the opportunity to send notice to potential class members. *Id.* After the class members have opted in and discovery is complete, the defendant may then file a decertification motion—the second stage of the *Lusardi* approach—asking the court to reassess whether the class members are similarly situated. *Id.* At that point, the court will fully evaluate the merits of the class certification. *Id.*

## III. DISCUSSION

The Court's analysis here need only address the first stage of the *Lusardi* inquiry. Plaintiffs must show that "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit." *Tolentino v. C & J Spec-Rent Servs., Inc.*, 716 F.Supp.2d 642, 647 (S.D. Tex. 2010). During the notice stage, the court makes its decision "usually based only on the pleadings and any affidavits which have been submitted[.]" *Id.* Courts "appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." *Mooney*, 54 F.3d at 1214 n. 8. "FLSA collective actions are generally favored because such actions reduce litigation costs for the individual plaintiffs and create judicial efficiency by resolving in one proceeding common issues of law and fact arising from the same alleged activity." *Tolentino*, 716 F.Supp.2d at 646.

## A. Existence of Aggrieved Co-Workers

In support of their Motion for Conditional Certification, Plaintiffs attach the affidavits of Abraham Gutierrez (Doc. 29–3), Clark Beckett (Doc. 29–4), and Justin Clark (Doc. 29–5). Gutierrez states that Defendants employed him to perform casing services for customers as a Floor Hand from June 2013 to 2015. (Doc. 29–3 at 1). Beckett also performed casing services for Defendants as a Floor Hand from June 2014 to January 2015. (Doc. 29–4 at 1). Clark performed casing services for Defendants as a Crew Pusher from August 2013 to January 2015. (Doc. 29–5 at 1).

Gutierrez, Beckett and Clark frequently worked more than 40 hours per week. (Docs. 29–3, 29–4, 29–5). For certain types of work, Defendants paid Gutierrez, Beckett and Clark on a per job basis or based on the amount of pipe laid at casing jobs instead of hourly. (*Id.*). Further, Gutierrez, Beckett and Clark assert that Defendants did not track or count all of the hours they worked to calculate their overtime pay. (*Id.*). As a result, Gutierrez, Beckett and Clark conclude that Defendants did not pay them overtime at the proper rate by including all hours worked. (*Id.*). In addition, Gutierrez, Beckett and Clark state that Defendants categorically excluded all additional pay earned, including non-discretionary bonuses, truck allowances, or safety pay, from their regular rate of pay to calculate overtime. (*Id.*).

Gutierrez, Beckett and Clark claim there are over 100 non-exempt employees who worked under the same conditions as them during their employment with Defendants who were not guaranteed a minimum rate of pay each workweek and were required to work overtime hours. (*Id.*). According to Gutierrez, Beckett and Clark, these non-exempt employees suffered from the same company policies as them, including: (1) not receiving payment for all

hours worked when Defendants paid them on a piece rate basis; and (2) not receiving proper overtime due to Defendants' policy of categorically excluding all additional pay earned from the regular rate used to calculate overtime. (*Id.*).

The Court finds that Gutierrez, Beckett, and Clark are familiar with Defendants' compensation policies as a result of their employment with Defendants and interactions with other employees. The pleadings in this case allege that Defendants implemented the same policy of underpayment with respect to many of its employees. Because Gutierrez, Beckett, and Clark have personal knowledge of Defendants' payment scheme, the Court concludes that this evidence is sufficient to credit "the assertion that aggrieved individuals exist," as well as the allegations that Defendants failed to appropriately compensate Plaintiffs and similarly situated employees as required by the FLSA. *Tolentino*, 716 F.Supp.2d at 647.

## B. Aggrieved Co–Workers Similarly Situated to Plaintiffs

To prevail on the motion for conditional certification, Plaintiffs must also show that they are similarly situated to the class members he seeks to represent. "[P]otential class plaintiffs are considered 'similarly situated' to the named plaintiffs if they are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Tolentino*, 716 F.Supp.2d at 649–50. "The positions need not be identical, but similar." *Id.*

Defendants argue that Plaintiffs are not similarly situated to "[a]ll workers employed by Defendants in the United States over the last three years who were paid in whole or in part on a quantity basis (whether pay per foot, pay per job, or some other measure) or whose overtime compensation was calculated based on a regular rate that excluded Additional Pay, including but not limited to non-discretionary bonus, safety bonus and truck allowance pay." (Doc. 39 at 3). The Court agrees. Here, Gutierrez and Beckett were employed by Defendants as Field Hands and Clark was employed by Defendants as a Crew Pusher. Plaintiffs fail to describe how the positions of Field Hands and Crew Pushers share job requirements similar to all casing employees. The Court finds that Plaintiffs' proposed class includes individuals whose job duties vary widely. Because Plaintiffs are not similarly situated to all casing employees, conditional certification of such a class is inappropriate. Therefore, Plaintiffs' Motion for Conditional Certification is **DENIED** in part with regard to the collective action allegations by which Plaintiff seeks to represent all casing employees.

However, the Court is of the opinion that Plaintiffs are similarly situated to Field Hands and Crew Pushers with respect to their job duties and pay provisions. Plaintiffs have raised substantial allegations to bind themselves to these putative class members (Flowback Field Hands and Crew Pushers) as victims of the same "decision, policy, or plan infected by discrimination." *Mooney*, 54 F.3d at 1214 n. 8. Because Plaintiffs have adduced sufficient evidence of a widespread discriminatory plan to show that they are similarly situated to Field Hands and Crew Pushers, the following revised definition of the collective action shall henceforth be employed:

**All current and former Field Hands and/or Crew Pushers employed by Defendants during the three-year period before the date the Court authorizes notice who received (1) pay on a quantity of work performed (whether pay per foot, pay per job, or some other piece rate measure) basis, or (2) addi-**

tional pay, including non-discretionary bonus payments, safety bonuses and truck allowance pay, not included in the regular rate of pay.

## C. Aggrieved Co–Workers' Desire to Opt In

■ Finally, Plaintiffs have made a sufficient showing that other workers want to opt-in to the instant action. Gutierrez, Beckett, and Clark observed other Field Hands and/or Crew Pushers work in excess of 40 hours per week during their employment with Defendants performing similar duties as them and they had conversations with these potential plaintiffs about Defendants' pay practices. (Docs. 29–3, 29–4, 29–5). Gutierrez, Beckett, and Clark assert that Defendants violated the rights of these potential plaintiffs by excluding additional pay—other than hourly or piece rate pay—earned by these employees from their overtime compensation and by failing to count or track all hours worked. (*Id.*). In addition, Gutierrez, Beckett, and Clark claim that based on these conversations they believe other Field Hands and/or Crew Pushers would be interested in joining this lawsuit. (*Id.*). Considering the lenient standard at this stage, conditional certification of a collective action is appropriate. *Tolentino*, 716 F.Supp.2d at 653.

## D. Plaintiffs' Proposed Notice

Plaintiffs have also requested the Court to approve their proposed notice and consent forms. (Doc. 29). As an initial matter, courts within the Fifth Circuit have repeatedly recognized that "based on the statute of limitations ... class certification is appropriately limited to workers employed by the defendant up to three years before notice is approved by the court." *Tolentino*, 716 F.Supp.2d at 654 (quoting *Quintanilla v. A & R Demolition, Inc.*,

No. H-04-1965, 2005 WL 2095104, at *16 (S.D. Tex. Aug. 30, 2005)); *see also Watson v. Travis Software Corp.*, No. H-07-4104, 2008 WL 5068806, at *9 (S.D. Tex. Nov. 21, 2008) ("A class period covering the three years before the date this court approves conditional certification and notice is appropriate in this case."). As such, the date of approval of notice is determinative for purposes of establishing a class period.

### 1. Dissemination of Notice

■ In their motion, Plaintiffs request disclosure of the "name, last known addresses, e-mail addresses, and telephone numbers" of the putative class members during the relevant time period. (Doc. 29 at 11). The Court finds that the disclosure of information shall be limited to the class of employees similarly situated to Plaintiffs (Field Hands and/or Crew Pushers), as defined by this Order. However, the Court is unpersuaded by Defendants' argument that they should only have to disclose names and last known addresses of the putative class members. (Doc. 30 at 7–8). Sending a notice in FLSA proceedings via email is an appropriate method of distribution. *See Pacheco v. Aldeeb*, No. 5:14-CV-121-DAE, 2015 WL 1509570, at *8–9 (W.D. Tex. Mar. 31, 2015) (unpublished) (approving notice by email). Accordingly, the Court overrules this objection.

■ Defendants also oppose Plaintiffs' request for workplace posting of the proposed Notice. (*Id.* at 8). Here, workplace posting serves the purpose of notifying putative class members who are currently employed by Defendants of their ability to opt-in to this litigation. In addition, Defendants presents no specific allegations or evidence to show that they would suffer harm as a result of posting the revised Notice in the same area where other government-required notices are posted.

Courts have approved physical posting as an appropriate form of notice in FLSA actions. *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 493 (E.D. Cal. 2006) (approving notice by posting in defendant's workplace over defendant's objections that such posting would be "punitive" and unnecessary); *Johnson v. Am. Airlines, Inc.*, 531 F.Supp. 957, 961 (N.D. Tex. 1982) (approving notice by direct mail, posting notice on company bulletin boards, and publishing the notice in a company magazine). Therefore, Plaintiffs shall have permission to disseminate the notice by regular mail, electronic mail, and workplace posting at Defendants' offices where other government-required notices are posted.

## 2. Language Regarding Defenses

Next, Defendants object to the proposed Notice's description of the lawsuit. (Doc. 30 at 9). The Court finds that Defendants should be able to explain their position on Plaintiffs' claims, including the following statement:

> Defendants dispute Plaintiffs' contentions and assert that Defendants' employees were properly and fairly paid in accordance with the FLSA or other applicable law and that the allegations in the lawsuit are without merit.

Accordingly, Defendants' objection on this ground is sustained.

## 3. Omission of Language Regarding Separate Representation

Defendants also contend that Plaintiffs' proposed notice improperly instructs recipients to fill out the consent form and mail it back to Plaintiffs' counsel. (Doc. 30 at 9). The Court finds that the proposed Notice must advise putative class members of their right to retain separate counsel and pursue their rights independently from the class. Therefore, Plaintiffs must file a revised proposed notice including language advising putative class members. of their right to separate representation by an attorney of their choosing. *Tolentino*, 716 F.Supp.2d at 655.

## 4. Subsequent Lawsuits

Finally, the Court finds that the following statement in the proposed Notice improperly instructs opt-in plaintiffs to file their consent "to recover [their] overtime wages against their current/former employer whether in the above-captioned action or in any subsequent action that may be filed on [their] behalf for such recovery, and this consent may be used in this case or in any subsequent case as necessary." The Court does not approve the Notice and consent forms for use in other lawsuits. Accordingly, the Court **STRIKES** the above-mentioned language from the proposed Notice that permits Plaintiffs to use consent forms obtained in the present action for other lawsuits.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part Plaintiffs' Motion for Conditional Certification. (Doc. 29).

It is therefore **ORDERED** that Plaintiffs shall within **three (3) business days** of this Order file with the Court a Revised Proposed Notice that complies with this Order.

It is further **ORDERED** that Defendants shall within **fourteen (14) days** of this Order, provide Plaintiffs' counsel with the names, last known addresses, e-mail addresses, and telephone numbers of the potential opt-in plaintiffs ("Court–Ordered Information"), in a usable electronic format. Telephone numbers shall be used only to verify addresses or e-mail addresses for potential opt-in plaintiffs, and shall not be used to solicit.

It is further **ORDERED** that Plaintiffs' counsel shall, upon obtaining the Court-Ordered Information, be permitted to send notices of this action in the form set forth in Plaintiffs' Revised Proposed Notice, by mail and email, for a period of **sixty (60) days** from the date Defendants provide Plaintiffs with the Court-Ordered Information.

It is further **ORDERED** that Plaintiffs' counsel shall file an advisory of any sending of such notices with this Court within **three (3) business days** of doing so. In such advisories, Plaintiffs' counsel shall specify the date and manner by which the notices were sent.

It is further **ORDERED** that the notice shall inform all potential opt-in plaintiffs that they shall have until **sixty (60) days** from the date Defendants provide Plaintiffs with the Court-Ordered Information to deposit in the mail or email their Notices of Consent to Join to counsel for Plaintiffs.

It is further **ORDERED** that Plaintiffs' counsel shall have until **fifteen (15) days** after the expiration of the sixty-day notice period (which ends **sixty (60) days** from the date Defendants provide Plaintiffs' counsel with the Court-Ordered Information) to file the Notices of Consent to Join of all opt-in plaintiffs received.

It is so **ORDERED.**

Attachment

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF TEXAS**

**MIDLAND/ODESSA DIVISION**

**DUSTIN MINYARD, JEREMY DUTCH, and JUSTIN CLARK, Individually and** on behalf of all others similarly situated, *Plaintiffs,*

v.

**DOUBLE D TONG, INC., ROBERT DUNCAN, and CODY DUNCAN,** *Defendants.*

**NO. MO:16–CV–00313–RAJ**

## ORDER GRANTING PLAINTIFFS' MOTION TO RECONSIDER

BEFORE THE COURT is Plaintiffs Dustin Minyard, Jeremy Dutch, and Justin Clark's (collectively, "Plaintiffs") Motion for Limited Reconsideration and Amendment to Order Granting in Part and Denying in Part Plaintiff's Motion for Conditional Certification. (Doc. 37). After due consideration, Plaintiffs' Motion to Reconsider shall be **GRANTED.** (Doc. 37).

### I. BACKGROUND

Plaintiffs bring this action both individually and on behalf of all others similarly situated against Defendants Double D Tong, Inc., Robert Duncan, and Cody Duncan (collectively, "Defendants"), asserting violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* (Doc. 22). Plaintiffs filed this lawsuit on August 19, 2016. (Doc. 1). On October 3, 2016, Defendants filed their Answer. (Doc. 19). On November 4, 2016, Plaintiffs filed their First Amended Complaint. (Doc. 22). On January 9, 2017, Plaintiffs filed their Second Amended Complaint. (Doc. 28).

Defendants are involved in oilfield casing services in oilfields throughout the United States. (*Id.* at 1). Defendants employ individuals to provide casing services at jobsites. (*Id.*). Plaintiffs contend they and the putative class members "regularly work in excess of 40 hours per workweek." (*Id.*). Plaintiffs assert Defendants violated the FLSA by failing to pay non-exempt employees (1) an overtime premium for all overtime hours worked; or (2) overtime at

the legally required rate. (*Id.*). Defendants paid Plaintiffs and the putative class "based on the quantity of work performed, including specifically on a (1) per-foot-of-pipe-laid basis; and (2) per-job or per-assignment basis." (*Id.* at 2).

On January 31, 2017, Plaintiffs filed their Motion for Conditional Certification. (Doc. 29). Plaintiffs bring this lawsuit as a collective action on behalf of themselves and the following class of potential FLSA opt-in plaintiffs:

All workers employed by Defendants in the United States over the last three years who were paid in whole or in part on a quantity basis (whether pay per foot, pay per job, or some other measure) or whose overtime compensation was calculated based on a regular rate that excluded Additional Pay, including but not limited to non-discretionary bonus, safety bonus and truck allowance pay. Additional Pay specifically excludes hourly pay and quantity based pay for casing work, but includes all other pay received by [Casing Employees].

(*Id.* at 5–6).

On February 27, 2017, the Court granted in part and denied in part Plaintiffs' Motion for Conditional Certification. (Doc. 35). The Court found that "Plaintiffs' proposed class includes individuals whose job duties vary widely." (*Id.* at 6). As such, the Court found Plaintiffs were not similarly situated to all casing employees and denied conditional certification of such a class. (*Id.*). However, the Court found that "Plaintiffs are similarly situated to Field Hands and Crew Pushers with respect to their job duties and pay provisions." Therefore, the Court conditionally certified the following collective action:

All current and former Field Hands and/or Crew Pushers employed by Defendants during the three-year period

before the date the Court authorizes notice who received (1) pay on a quantity of work performed (whether pay per foot, per job, or some other piece rate measure) basis, or (2) additional pay, including non-discretionary bonus payments, safety bonuses and truck allowance pay, not included in the regular rate of pay.

(*Id.*).

On March 7, 2017, Plaintiffs filed their Motion for Limited Reconsideration and Amendment to Order Granting in Part and Denying in Part Plaintiff's Motion for Conditional Certification. (Doc. 37). Plaintiff seeks to expand the definition of the conditionally-certified class to include all nonexempt casing employees irrespective of job duties. (*Id.* at 1). Plaintiff argues that the "similarly situated" analysis in this case does not depend on the various job duties performed by the members of the proposed class because this is not a misclassification case. (*Id.* at 2). Rather, Plaintiff asserts this case involves a uniform pay plan for non-exempt employees. (*Id.*). Therefore, Plaintiff seeks reconsideration of the Court's Order on the basis that the class members' job duties are immaterial to certification of the class due to the alleged common, illegal pay plan applicable to all non-exempt casing employees. (*Id.*).

## II. LEGAL STANDARD

A motion to reconsider that challenges an interlocutory order is analyzed pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. Rule 54(b) permits the district court to reconsider an interlocutory order for any reasons it deems sufficient. *United States v. Renda*, 709 F.3d 472, 479 (5th Cir. 2013). The Rule states:

[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or

parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).

Under Rule 54(b), the district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Melancon v. Texaco, Inc.,* 659 F.2d 551, 553 (5th Cir. 1981). However, Rule 54(b) motions are not the proper vehicle for rehashing evidence, legal theories, or arguments. *Simon v. United States,* 891 F.2d 1154, 1159 (5th Cir. 1990). Instead, they "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Waltman v. Int'l Paper Co.,* 875 F.2d 468, 473 (5th Cir. 1989).

### III. DISCUSSION

Upon reconsideration of the law and facts of this case, the Court is of the opinion that the purported differences between Defendants' non-exempt casing employees are not a bar to preliminary certification. A class that encompasses a wide range of job positions may be conditionally certified as long as the differences between class members are not material to the allegations of the case. *Behnken v. Luminant Min. Co.,* LLC, 997 F.Supp.2d 511, 522 (N.D. Tex. 2014) ("Because it appears from the record developed thus far that the employees' job classifications, descriptions, or duties do not affect any of the facts that are material to plaintiffs' claim, these differences are not sufficient to defeat conditional certification"). Here, the purported dissimilarities between members of Plaintiffs' proposed class who were paid in whole or in part on a quantity basis (whether pay per foot, pay per job, or some other measure) or whose overtime compensation was calculated based on a regular rate that excluded additional pay, including but not limited to non-discretionary bonus, safety bonus and truck allowance pay, are irrelevant because a common scheme or policy allegedly affects all non-exempt casing employees. Because Plaintiffs have established common policies applied to Defendants' non-exempt casing employees (1) who were paid on a quantity of work basis and did not receive overtime pay for all hours worked and (2) who were paid additional pay without overtime at the legally-required rate, the Court **GRANTS** Plaintiffs' Motion to Reconsider. (Doc. 37).

Defendants employ non-exempt workers to provide casing services to customers. Plaintiffs claim Defendants failed to track or count hours worked by casing employees when Defendants paid casing employees on a quantity of work or piece rate basis, and therefore, allegedly underreported overtime hours worked by casing employees. Defendants also pay casing employees additional pay, including non-discretionary bonuses, truck allowances, and safety bonus pay. Plaintiffs claim Defendants categorically exclude all additional pay, other than hourly and quantity of work pay for casing work, from the regular rate of pay to calculate casing employees' overtime compensation.

While the Court acknowledges that Defendants' casing employees have dissimilar job positions, these dissimilarities are not legally relevant because the alleged FLSA violations in this case do not turn on the nature of the work performed. *See Tamez v. BHP Billiton Petroleum,* No. 5:15-cv-330, 2015 WL 7075971, at *3–4 (W.D. Tex. Oct. 5, 2015) (unpublished). Courts generally require that members of an FLSA class have similar job titles and responsibilities. *See Pacheco v. Aldeeb,* No. 5:14-CV-121-DAE, 2015 WL 1509570, at *7 (W.D. Tex. Mar. 31, 2015) (unpublished).

However, in the present case, the proposed class includes only non-exempt employees. Thus, the alleged FLSA violations do not depend on the job title or responsibilities of each plaintiff. If Plaintiffs prevail on their claims, then Defendants violated the FLSA with regard to every nonexempt employee paid on a quantity of work basis without overtime pay for all hours worked and given additional pay without overtime at the legally-required rate regardless of each plaintiff's particular job position. Because Plaintiffs allege that the compensation scheme is in of itself a violation of the FLSA, no further factual inquiry into the job duties of each plaintiff is necessary. As such, liability can be determined collectively without limiting the class to a specific job position.

In the instant case, the claims of the putative class members are similar in that they are compensated under the same regimen. *Aguilar v. Complete Landsculpture, Inc.*, No. 3:04-CV-0776-D, 2004 WL 2293842, at *4 (N.D. Tex. Oct. 7, 2004) ("The claims of the putative class members are similar in that... they were compensated under the same regimen. Thus, under plaintiffs' theory of the case, the fact that [they] had somewhat different duties and rates of pay is immaterial."). Because the dissimilar job responsibilities among the class have not been shown to be relevant to Plaintiffs' FLSA allegations, they are not a barrier to conditional certification. Accordingly, the Court amends the definition of the conditionally-certified class as follows:

**All current and former non-exempt casing workers employed by Defendants during the three-year period before the date the Court authorizes notice who received (1) pay on a quantity of work performed (whether pay per foot, pay per job, or some other piece rate measure) basis, or (2) additional pay, including non-discretionary bonus payments, safety bonuses and truck allowance pay, not included in the regular rate of pay.**

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Limited Reconsideration and Amendment to Order Granting in Part and Denying in Part Plaintiff's Motion for Conditional Certification. (Doc. 37).

It is therefore **ORDERED** that Plaintiffs shall within **three (3) business days** of this Order file with the Court a Revised Proposed Notice that complies with this Order.

It is further **ORDERED** that Defendants shall within **fourteen (14) days** of this Order, provide Plaintiffs' counsel with the names, last known addresses, e-mail addresses, and telephone numbers of the potential opt-in plaintiffs ("Court–Ordered Information"), in a usable electronic format. Telephone numbers shall be used only to verify addresses or e-mail addresses for potential opt-in plaintiffs, and shall not be used to solicit.

It is further **ORDERED** that Plaintiffs' counsel shall, upon obtaining the Court–Ordered Information, be permitted to send notices of this action in the form set forth in Plaintiffs' Revised Proposed Notice, by mail and email, for a period of **sixty (60) days** from the date Defendants provide Plaintiffs with the Court–Ordered Information.

It is further **ORDERED** that Plaintiffs' counsel shall file an advisory of any sending of such notices with this Court within **three (3) business days** of doing so. In such advisories, Plaintiffs' counsel shall specify the date and manner by which the notices were sent.

492

It is further **ORDERED** that the notice shall inform all potential opt-in plaintiffs that they shall have until **sixty (60) days** from the date Defendants provide Plaintiffs with the Court–Ordered Information to deposit in the mail or email their Notices of Consent to Join to counsel for Plaintiffs.

It is further **ORDERED** that Plaintiffs' counsel shall have until **fifteen (15) days** after the expiration of the sixty-day notice period (which ends **sixty (60) days** from the date Defendants provide Plaintiffs' counsel with the Court–Ordered Information) to file the Notices of Consent to Join of all opt-in plaintiffs received.

It is so **ORDERED**.

SIGNED this 21st day of March, 2017.

/s/

ROBERT A. JUNELL

Senior United States District Judge