NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Argued June 7, 2017
Decided June 16, 2017

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 16-3389

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 1:14-cr-00111-1 |
| CORTEZ SANDERS, *Defendant-Appellant.* | John Z. Lee, *Judge.* |

**ORDER**

Cortez Sanders was convicted by a jury of possessing a firearm as a felon. The government's key witness at trial was a police officer who testified that he had chased Sanders through an alley and seen him throw away a small object, which turned out to be a gun. Sanders contended that the officer's account of the chase was physically impossible and moved the district court for a judgment of acquittal and, alternatively, for a new trial. The district court denied Sanders's motions, and he now appeals. Because the evidence is sufficient, we affirm the judgment.

Sanders was charged with possessing a firearm as a felon, *see* 18 U.S.C. §§ 922(g)(1). Because Sanders stipulated that he previously had been convicted of a felony and that the gun had traveled in interstate commerce, the only issue at the three-day trial was whether the gun was in his possession.

Sanders's friend, Princess White, testified first. She said that she had met Sanders and other friends at a neighborhood bar in Englewood, on Chicago's south side, in the early morning of September 21, 2012. Sanders arrived carrying a small, opaque plastic bag, which he placed under the table. When the group later went outside to smoke, Sanders got into a heated argument with another man referred to as "ATL." White testified that she heard ATL threaten to shoot Sanders, and that Sanders told ATL that he would "shoot him back." White also thought she heard Sanders tell another friend to go get his bag. Sanders and ATL then began shoving each other, and White decided to leave. On her way home, White called 911.

Among the responding officers were partners Adam Wallace and Michael Callahan, who were patrolling nearby when the 911 dispatch came through. Within about five minutes, they arrived on the block of West 59th Street between South Emerald Avenue and South Union Avenue, near the bar. Noticing three or four other police cars in the area, they decided to drive through the alley running behind 59th Street. In the alley, Wallace spotted a man running and pulling at his waistband. The officers pursued him to the end of the alley, turning northbound on South Emerald Avenue and continuing past a few houses.

When the runner darted east through a vacant lot, Wallace bolted from his police car and gave chase on foot. Wallace testified that he pursued the man through the lot and into the alley behind Emerald, where he then saw the man "remove a small chrome object from his waistband" and "throw it into an open garbage can." As the man tossed the object, he turned his body slightly towards Wallace, who said that he glimpsed the man's face. Wallace then lost sight of the runner for a few seconds before noticing him up ahead in a vacant lot, "being stood up" by two other officers, Kelly Doyle and Tara Murphy. At trial Wallace identified the man he chased as Sanders.

Officer Callahan also testified and recounted how the chase unfolded. He confirmed that he and Wallace had spotted a man running in the east-west alley and followed him onto Emerald, where Wallace then left the car to pursue on foot. When the chase ended, Callahan found a small gun in the garbage can specified by Wallace. Callahan testified that the area surrounding the garbage can was "fairly well lit" by street lights.

Officer Tara Murphy next testified about Sanders's arrest. She and her partner also responded to the 911 dispatch and parked on 58th and Union to help look for the man Wallace was chasing. Murphy then saw someone lying on the ground in the vacant lot by their car. She and her partner went over to the man, cuffed him, and stood him up. Just then Wallace appeared and identified him as the man whom he had been chasing. Murphy identified that man in court as Sanders.

At the close of the government's evidence, Sanders moved for a judgment of acquittal on the ground that the government had failed to present sufficient evidence to sustain a conviction, *see* FED. R. CRIM. P. 29(a). The district court took the motion under advisement but submitted the case to the jury. The jury found Sanders guilty.

Sanders renewed his motion for a judgment of acquittal, *see* FED. R. CRIM. P. 29(c), and also moved for a new trial, *see* FED. R. CRIM. P. 33, arguing primarily that Wallace's testimony about the timing of events could not be reconciled with the route of the chase. The district judge denied Sanders's motions, concluding that "[e]ven if the accuracy of aspects of Wallace's testimony could be questioned, a rational jury could nevertheless credit the crucial parts." The court added that "[t]his is especially true in light of the corroborating evidence from White and Callahan." The judge sentenced Sanders to 74 months' imprisonment and 36 months' supervised release.

On appeal Sanders maintains that the evidence does not support a finding that he possessed a gun. Wallace was the only government witness who claimed to see him with a gun, and Sanders contends that accepting Wallace's account of the chase would require one to "reject fundamental principles of time and space." According to Sanders, if Wallace were as close behind the runner as he testified, then he would have caught up to the runner when the runner slowed to toss the object into the garbage can. Moreover, Sanders contends, Wallace could not possibly have lost sight of the runner in such a small space. And conversely, Sanders continues, if Wallace were farther away than he testified, then it would have been impossible for him to see around the corner into the alley where Sanders tossed the gun.

We conclude that Wallace's testimony about the chase is not so incredible that "no rational trier of fact could find guilt beyond a reasonable doubt." *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Rebolledo-Delgadillo*, 820 F.3d 870, 875 (7th Cir. 2016). It was nighttime. In darkness Wallace would have had to slow down and look around once he lost sight of Sanders. And Sanders hid by lying on the ground of the vacant lot. We cannot say that Wallace's account of the chase is actually "impossible under the laws of nature." *United States v. Hayes*, 236 F.3d 891, 896 (7th Cir. 2001)

(internal quotation and citation omitted). Moreover, Wallace's testimony that he was 10 to 15 feet behind Sanders and lost sight of Sanders only for 30 seconds was an approximation. As the district court recognized, a jury may discredit part of Wallace's testimony, such as the exact distance he was behind Sanders or the exact amount of time he lost sight of Sanders, while believing the crucial parts. *See United States v. Lawson*, 810 F.3d 1032, 1039–40 (7th Cir. 2016); *United States v. Hampton*, 585 F.3d 1033, 1041–42 (7th Cir. 2009).

Sanders also challenges the district court's assessment of the government's remaining evidence. He argues that the district court "incorrectly concluded that the remaining government witnesses adequately corroborated Wallace's claim that Sanders possessed a gun." But White testified that she heard Sanders threaten to shoot ATL, and Callahan testified that he found a gun in the very garbage can to which Wallace directed him; this evidence offers circumstantial support of Sanders's possession of a gun. A jury may rationally convict based on only circumstantial evidence. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003); *United States v. Moore*, 572 F.3d 334, 337 (7th Cir. 2009).

Sanders lastly contends that the district court abused its discretion in denying his Rule 33 motion for a new trial because it did not consider the proper standard: whether the verdict is so contrary to the weight of evidence that the interests of justice require a new trial, *see United States v. Peterson*, 823 F.3d 1113, 1122 (7th Cir. 2016). That standard, unlike the one applicable to Sanders's motion for judgment of acquittal, allows a district court to consider witness credibility independently, *see United States v. Washington*, 184 F.3d 653, 657–58 (7th Cir. 1999). It is true that the district court did not distinguish between the two standards, instead considering both motions together and using only the language of the standard applying to Sanders's motion for judgment of acquittal. Application of the wrong standard may require a remand in some cases, *see United States v. Smith*, 674 F.3d 722, 730 (7th Cir. 2012), but this is not the "extreme case" for which a judge's power under Rule 33 is reserved. *See Peterson*, 823 F.3d at 1122. As previously noted, there was substantial evidence from which a jury could find that Sanders possessed a gun. Even when considering witness credibility under Rule 33, a court gives the jury's factfinding great deference, *see United States v. Hassebrock*, 663 F.3d 906, 920 (7th Cir. 2011). We do not find an abuse of discretion here.

Accordingly, we AFFIRM the judgment.